UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOSE M. RODRIGUEZ,

      Plaintiff,

v.                                Case No. 3:17cv155-RV-HTC

BRENDALIZ ASENCIO, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Jose Rodriguez, proceeding *pro se* and *in forma pauperis*, has filed this suit alleging the Defendants violated the Eighth Amendment, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act of 1973. The Defendants have filed motions to dismiss (ECF Docs. 45, 47, 60), and Plaintiff responded in opposition (ECF Docs. 57, 65). The motions have been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Considering the parties' submissions and the relevant law, the undersigned recommends that Defendants Chandler, Rice and Simmons's motion to dismiss (ECF Docs. 45) be GRANTED IN PART and DENIED IN PART; Defendant Inch's motion to dismiss (ECF Doc. 47) be GRANTED; and Defendant Asencio's motion to dismiss (ECF Doc. 60) be GRANTED IN PART and DENIED IN PART.

I. Background

Plaintiff is an inmate of the Florida Department of Corrections ("FDOC") currently confined at the Mayo Correctional Institution Annex. Plaintiff's third amended complaint names five (5) Defendants: (1) Mark S. Inch, the Secretary of the FDOC; (2) Dr. Brendaliz Asencio; (3) Nurse S. Chandler; (4) Nurse Simmons; and (5) Nurse K Rice. ECF Doc. 26 at 1-3. The complaint sets forth the factual allegations that follow, the truth of which are accepted for purposes of determining Defendants' motions to dismiss.

In February 2015, Plaintiff entered FDOC custody with a cane for walking. *Id.* at 6. Documents attached to Plaintiff's complaint from the Social Security Administration indicate he "has clinical diagnoses of Status Post Fracture of the Left Lower Extremity, Limb Pain, Lumbar Intervertebral Disc Displacement and Lumbosacral Radiculitis." *Id.* at 36. At the South Florida Reception Center, he received a medical pass allowing him to possess and use a cane; the pass was subsequently renewed at Northwest Florida Reception Center. *Id.* at 6. Upon arriving at Walton Correctional Institution ("Walton CI") on May 11, 2015, however, a correctional officer told Plaintiff "he could forget about his walking cane because it was not allowed at [Walton CI]." *Id.* Plaintiff explained he needed the cane "to ambulate and balance," but Nurse Simmons took the cane to Officer Hicks. *Id.* Nurse Rice stated, "your being disabled was not the same as in society." *Id.*

Hicks then placed the cane in Plaintiff's property, and Nurse Simmons refused to give Plaintiff a replacement cane. *Id.* Plaintiff alleges the loss of his cane caused severe pain in his back and legs, as well as swelling in his legs. *Id.* at 7, 13.

Plaintiff asked Dr. Asencio to return the cane, but Asencio informed Plaintiff "the cane would not be returned because it was a weapon." *Id.* To avoid lifting his fifty (50) to sixty (60) pound locker every day, Plaintiff asked Asencio for a no lifting pass. *Id.* Although no lifting passes were issued to a variety of inmates at Walton CI, Asencio refused Plaintiff's request, stating "she could not do so for security reasons." *Id.* Instead, Asencio prescribed Plaintiff ibuprofen and sent him back to his dorm. *Id.* at 7, 10.

A few days later, Plaintiff returned to sick call because of pain and swelling in his legs. *Id.* at 10. He complained to Dr. Asencio about his treatment and again requested his cane. *Id.* Plaintiff claims Asencio "retaliated against [his] complaints by changing [his] medication to [Naproxen] and giving [him an] ace bandage for his knee instead of a knee-brace." *Id.* Asencio "then insulted Plaintiff" by telling him he needed to lose weight; Plaintiff agreed but stated "exercising was impossible without his walking aid . . . ." *Id.* Plaintiff also said he was having trouble showering because the showers lacked chairs or handrails. *Id.* Plaintiff tried to show Asencio his pre-incarceration medical records "documenting his disabilities," but Asencio refused to view them. *Id.* When Plaintiff asked for a walker, Asencio stated, "I told

you we don't prescribe walkers." *Id.* Other inmates at Walton CI, however, used walkers. *Id.* Dr. Asencio attempted to prescribe tramadol (which Plaintiff refused) and referred Plaintiff to the Reception and Medical Center ("RMC") for an MRI and therapy. *Id.* At the RMC, a physician examined Plaintiff and provided him with a cane, therapy and medication, which relieved a "majority of his pain." *Id.* Plaintiff, however, did not undergo an MRI. *Id.*

Plaintiff returned to Walton CI on August 15, 2016, with a medical pass for a cane that lasted through June 22, 2017. *Id.* at 11. Nurse Chandler reviewed the pass and sent Plaintiff "to his housing area." *Id.* Later, however, Chandler called Plaintiff back to the medical department and told him he was to be placed in the infirmary for twenty-three (23) hours for observation. *Id.* After about four (4) hours, Chandler, at the direction of Dr. Asencio, confiscated Plaintiff's cane. *Id.* Plaintiff told Chandler the "evaluations done at RMC determined he needed a walking cane," but Chandler stated, "you have been evaluated here, and [the] RMC evaluation don't mean nothing." *Id.* Plaintiff, however, maintains "no new tests or evaluations had been done at [Walton CI]." *Id.* Dr. Asencio later denied Plaintiff's request for a transfer "to a certified ADA dormitory" which would have minimized Plaintiff's walking. *Id.*

On February 15, 2017, Plaintiff was provided a "non-operable" walker; it "was without wheels or [a] seat for resting that all the other walkers provided to

inmates at [Walton CI] had." *Id.* Plaintiff alleges he received this type of walker due to retaliation by Asencio, Simmons, Rice and Chandler. *Id.*

On May 8, 2017, Plaintiff was transferred to the RMC and then referred to Jacksonville's Memorial Hospital. *Id.* at 12. Plaintiff had a CAT scan, but medical personnel at the hospital advised him the CAT scan was unreadable. *Id.* While Plaintiff was at the RMC, staff gave him a cane and prescribed gabapentin for nerve pain. *Id.*

When Plaintiff returned to Walton CI on August 15, 2017, Dr. Asencio took Plaintiff's cane and ended his prescription for gabapentin, stating "they don't prescribe that at [Walton CI]." *Id.* Two (2) weeks later, Asencio stated she "was told by Dr. Lay . . . [her] boss not to send [Plaintiff] back to the specialist [doctor] even though [he] was scheduled to return within a few months." *Id.*

Based on the foregoing, Plaintiff alleges the Defendants violated the Eighth Amendment, the ADA and the Rehabilitation Act. *Id.* at 13-21. As relief, he seeks an injunction and $850,000 in damages. *Id.* at 21-22.

II.  Legal Standard

In considering a motion to dismiss for failure to state a claim, the Court reads Plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), and accepts "[a]ll well-pleaded facts in plaintiff's complaint and all reasonable inferences drawn from those facts . . . as true." *McGinley v. Houston*,

361 F.3d 1328, 1330 (11ᵗʰ Cir. 2004) (citation omitted).  "There are a few exceptions to this rule, such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice." *Ellen S. v. Fla. Bd. of Bar Exam'rs*, 859 F. Supp. 1489, 1492 (S.D. Fla. 1994) (citation omitted). Further, mere "labels and conclusions" are not accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (noting courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (explaining that conclusory allegations are not entitled to a presumption of truth); *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5ᵗʰ Cir. 1974) ("unwarranted deductions of fact are not admitted as true").

As the Supreme Court reiterated in *Iqbal*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  556 U.S. at 678.  A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The mere possibility the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *Id.*  The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative

level," *Twombly*, 550 U.S. at 555, or, "nudge[] the[] claim[] across the line from conceivable to plausible . . . ." *Id.* at 570.

## III. Discussion

### A. Exhaustion

Defendants argue Plaintiff failed to exhaust his administrative remedies before bringing suit. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory precondition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *See Booth*, 532 U.S. at 734, 741. The requirement is not subject to waiver by a court, or futility or inadequacy exceptions. *See id.* at 741 n.6. Moreover, the PLRA requires "proper exhaustion" so that the agency has an opportunity to address the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006); *see also id.* at 95 ("The benefits of exhaustion can be realized

only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."). A court must dismiss an action if satisfied the inmate failed to properly exhaust his available administrative remedies before filing suit. *See Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000).

The grievance procedures promulgated by the FDOC generally require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010). For complaints regarding the ADA or medical treatment, an inmate may bypass the informal grievance step. *See* Fla. Admin. Code r. 33-103.005(1).

The defense of failure to exhaust should be treated as a matter in abatement. *See Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting *Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised

in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *See Turner*, 541 F.3d at 1082. "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. (citing *Bryant*, 530 F.3d at 1373-74).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id*. (citing *Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

Defendants Asencio, Chandler, Rice and Simmons ("Medical Defendants") acknowledge Plaintiff filed an April 10, 2016 formal grievance (ECF Doc. 26 at 40)

and May 1, 2016 appeal to the Secretary (ECF Doc. 26 at 42) regarding the confiscation of his cane at Walton CI and the inadequacy of his medications. ECF Doc. 45 at 8; ECF Doc. 60 at 7. Nevertheless, the Medical Defendants contend Plaintiff failed to exhaust his administrative remedies. First, they argue these grievances "are in direct and clear violation of [FDOC] rules because Plaintiff addressed more than one issue or complaint in each of them." *Id*.

The FDOC's rules provide that each grievance should address only one issue or complaint. *See* Fla. Admin. Code r. 33-103.106, 33-103.107. The FDOC, however, did not find the April 10 and May 1 grievances ran afoul of this rule. The FDOC addressed the merits of the grievances; it did not return them without processing or even mention that Plaintiff grieved multiple issues. ECF Doc. 26 at 41, 43. The undersigned will, in this instance, defer to the FDOC's determination that Plaintiff's grievances complied with FDOC rules. The Medical Defendants have not cited a single case which holds that, under the PLRA, courts should conduct an independent review of an inmate's grievances to assess their compliance with prison rules, when prison officials have determined the grievances should be addressed on their merits. Such an inquiry would not further the purposes of the exhaustion requirement. *See Alexander*, 159 F.3d at 1327 (noting the rationales for exhaustion include "to permit the agency to exercise its discretion or apply its expertise" and "to conserve scarce judicial resources").

Next, the Medical Defendants claim Plaintiff "failed to exhaust his administrative remedies because he failed to identify the Defendants in his grievances." ECF Doc. 45 at 8-9. To support their argument, the Medical Defendants cite *Brown v. Sikes*, in which the Eleventh Circuit stated the PLRA "requires a prisoner to exhaust all 'available' administrative remedies, and implicit in that requirement is an obligation on the prisoner to provide those officials who will pass upon the grievance all the relevant information he has, including the identity of any officials he thinks have wronged him and any witnesses." 212 F.3d 1205, 1207-08 (11th Cir. 2000).

*Brown*, however, predates *Jones v. Bock*, 549 U.S. 199 (2007). In *Jones*, the Supreme Court "clarified that the PLRA does not mandate 'a name all defendants requirement,' thus limiting the *Brown* court's holding." *Cronin v. Jones*, Case No. 3:17cv1283-J-39JBT, 2019 WL 144915, at *5 (M.D. Fla. Jan. 9, 2019) (quoting *Jones*, 549 U.S. at 217). Instead "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. Because the FDOC's grievance procedure does not require an inmate to identify each person he intends to later sue, the Medical Defendants have not demonstrated Plaintiff failed to properly exhaust his administrative remedies. *See Cronin*, 2019 WL 144915, at *6 ("To the

extent Plaintiff failed to identify Dr. Campbell in his grievances, his failure to do so is not fatal to his claim because the Florida grievance procedure does not require that a prisoner identify each person he intends to later sue.") (citing Fla. Admin. Code r. 33-103.005 through 33-103.007). Plaintiff's grievances alerted prison officials that he was dissatisfied with his medications and the loss of his cane, which is all that is required. *See Parzyck*, 627 F.3d at 1219 ("Section 1997e(a)'s exhaustion requirement is designed 'to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued . . . .'") (quoting *Jones*, 549 U.S. at 219).

Defendant Inch makes a different argument regarding exhaustion. Inch claims "Plaintiff's efforts to pursue his administrative remedies were sporadic and scattered at best" because he did not complete the appeals process for every grievance he filed. ECF Doc. 47 at 11, 17-18. Inch, however, fails to cite any support for the proposition that, after having completed the grievance process once, an inmate must appeal every subsequent grievance he files to satisfy the PLRA's exhaustion requirement. Plaintiff's May 1, 2016 grievance appeal, which specifically complained about his medication and his cane being taken (ECF Doc. 26 at 42), exhausted his administrative remedies.[1]

---

[1] Inch also appears to suggest that Plaintiff's apparent satisfaction with some of the responses to his grievances precludes him from maintaining this suit. ECF Doc. 47 at 17-18. Again, Inch provides no support for such an argument. In fact, courts have held **Error! Main Document**

B.  Failure to State a Claim

    i.  ADA and Rehabilitation Act

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132; *Owens v. Sec'y, Fla. Dep't of Corr.*, 602 F. App'x 475, 477 (11th Cir. 2015) ("Under Title II of the ADA, public entities are prohibited from discriminating against individuals with disabilities or denying them services because of their disabilities.").

Similarly, § 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[2]  29 U.S.C. § 794(a); *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1310 (11th Cir. 2007) ("The Rehabilitation Act prohibits recipients

---

**Only.**the approval of a grievance satisfies the PLRA's exhaustion requirement.  *See e.g.*, *Henderson v. Langenbrunner*, Case No. 2:09cv149-FtM-36DNF, 2010 WL 1408371 at *6 (M.D. Fla. Apr. 2, 2010) (finding inmate exhausted his administrative remedies when his grievance was approved).

[2] The ADA "unmistakably includes State prisons and prisoners within its coverage[,]" *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998), and Plaintiff alleges the FDOC receives federal financial assistance (ECF Doc. 26 at 19).

of federal financial assistance from discriminating against individuals with disabilities.") (citation omitted).

To state a claim under either statute, a plaintiff must allege: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007); *see also Henderson v. Thomas*, 913 F. Supp. 2d 1267, 1287 (M.D. Ala. 2012) ("Claims under both [the ADA and Rehabilitation Act] are governed by the same standards.") (citations omitted).

Plaintiff's allegations regarding the loss of his cane and the type of medications he was prescribed do not state a claim under either the ADA or the Rehabilitation Act.[3]  His allegations do not indicate he was denied the benefits of any FDOC services, programs or activities provided to other non-disabled inmates

---

[3] Plaintiff also alleges he was "denied adequate bathing" because the showers at Walton CI lacked medical chairs or handrails to help him stand and balance for the duration of shower time.  ECF Doc. 26 at 10, 20.  Although this allegation could support a claim under the ADA or Rehabilitation Act, Plaintiff did not exhaust his administrative remedies regarding the condition of the showers before bringing suit.  Neither his April 10, 2016 formal grievance (*id.* at 40) nor his May 1, 2016 appeal to the Secretary (*id.* at 42), mentioned the condition of the Walton CI showers.  And Defendant Inch's motion to dismiss, and the log of grievance appeals attached thereto, show Plaintiff did not complete the grievance process regarding the showers before this case began on March 6, 2017.  ECF Doc. 47 at 13-15; ECF Doc. 47-1.

due to his back and leg impairment.  *See Bircoll*, 480 F.3d at 1081 ("The Supreme Court has instructed that a disabled prisoner can state a Title II-ADA claim if he is denied participation in an activity provided in state prison by reason of his disability.") (citing *Yeskey*, 524 U.S. at 211).  Nor does he plausibly allege that he was otherwise discriminated against due to his disability.

Plaintiff does make conclusory allegations that his treatment was discriminatory.  *See* ECF Doc. 26 at 11 (giving Plaintiff a walker "without wheels or [a] seat for resting" that differed from other walkers "was done in a discriminatory way"); *id.* at 12 (Asencio's "actions also proved discriminatory as all other inmates housed at [Walton CI were] receiving adequate treatment"); *id.* at 14 ("Defendant Simmons['s] actions proved discriminatory as other inmates possessed assistance in walking with medical (canes)").  However, allegations that other inmates with walking impairments received the assistive devices Plaintiff desired actually undermine his ADA and Rehabilitation Act claims, because they suggest that any disparate treatment was not due to his disability.  *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("Under either the ADA or the Rehabilitation Act, Fitzgerald is obligated to show that he was 'otherwise qualified' for the benefits he sought and that he was denied those 'solely by reason of disability.'") (citation omitted); *United States v. Univ. Hosp., State Univ. of New York at Stony Brook*, 729 F.2d 144, 157 (2nd Cir. 1984) ("Where the handicapping

condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say with certainty that a particular decision was 'discriminatory.'").

Furthermore, Plaintiff's real complaint is with the medical treatment the Defendants provided for his condition. Allegations of inadequate medical treatment, however, are insufficient to state a claim under the ADA or Rehabilitation Act.[4] *See Jones v. Rutherford*, 546 F. App'x 808, 811-12 (11th Cir. 2013) ("[T]he ADA is not a 'remedy for medical malpractice' and 'would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners.'") (quoting *Schiavo v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005)); *Shelton v. Ark. Dep't of Human Servs.*, 677 F.3d 837, 843 (8th Cir. 2012) ("The district court correctly held that a claim based upon improper medical treatment decision may not be brought pursuant to either the ADA or the Rehabilitation Act."); *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."); *Burger v. Bloomberg*, 418 F.3d

---

[4] Additionally, in a previous iteration of his complaint, Plaintiff identified "Corizon LLC" and "Centurion of Florida, LLC" as the entities responsible for providing medical care to inmates at Walton CI. ECF Doc. 21 at 2, 15-16. Because the Medical Defendants worked for a private corporation and not a "public entity," they cannot be held liable for violations of the ADA. *See Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010) (holding prisoner could not bring ADA official capacity claims against employees of private corporation operating prison because "a private corporation is not a public entity merely because it contracts with a public entity to provide some service"). Likewise, because Plaintiff does not allege that Corizon or Centurion received federal financial assistance, the Medical Defendants cannot be held liable for a violation of the Rehabilitation Act. ECF Doc. 45 at 10. Nor could they be liable for an ADA or Rehabilitation Act claim in their individual capacities. *See Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) ("[T]here is no individual capacity liability under Title II of the ADA or RA.") (citing *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2nd Cir. 2001)).

882, 883 (8ᵗʰ Cir. 2005) ("[A] lawsuit under the Rehab Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions.") (citations omitted); *Carrion v. Wilkinson*, 309 F. Supp. 2d 1007, 1016 (N.D. Ohio 2004) ("The ADA and Rehabilitation Act afford disabled persons legal rights regarding access to programs and activities enjoyed by all, but do not provide them with a general federal cause of action for challenging the medical treatment of their underlying disabilities.") (quotation omitted); *Vick v. Core Civic*, 329 F. Supp. 3d 426, 443 (M.D. Tenn. 2018) ("[C]ourts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment but do not allege that the inmate was treated differently because of his or her disability.").   Thus, Plaintiff's ADA and Rehabilitation Act claims should be dismissed against all of the Defendants.

    ii. Eighth Amendment

    A § 1983 claim may arise when prison officials act with deliberate indifference to an inmate's serious medical needs in violation of the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  To establish deliberate indifference, a plaintiff "must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."  *Mann v. Taser Int'l, Inc.*, 588 F.3d at 1291, 1306-07 (11ᵗʰ Cir. 2009) (citation omitted).

A serious medical need is "one that, if left unattended, poses a substantial risk of serious harm." *Id.* at 1307 (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). For an actor to be found to have acted with deliberate indifference to that need, a plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013) (quoting *Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010)). For an actor to have subjective knowledge, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference requires more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citation and quotations omitted).

    (a) Individual Capacity[5]

---

[5] Plaintiff's complaint indicates he is suing the Medical Defendants in their official capacities. ECF Doc. 26 at 13-22. Nevertheless, the undersigned will address Plaintiff's Eighth Amendment claims as if they are brought against the Medical Defendants in their individual capacities. *See West v. Keve*, 571 F.2d 158, 163 (3rd Cir. 1978) ("If the complaint in this case is read narrowly and technically, it can be concluded that the defendants were being sued only in their official capacities. However, the complaint states facts constituting a damage claim against the defendants in their individual capacities. We must construe the complaint favorably to the plaintiff . . . and 'as to do substantial justice.'") (citations omitted). Furthermore, the Medical Defendants' motions to dismiss address Plaintiff's Eighth Amendment claims against them as if he has sued them in their individual capacities. ECF Doc. 45 at; ECF Doc. 60 at 9-12.

The Medical Defendants argue Plaintiff's "[s]welling and pain have generally been held not to constitute a serious medical need or condition." ECF Doc. 45 at 11, 12. Plaintiff, however, alleges: (1) he suffers from chronic back and leg pain which is exacerbated by the lack of a walking aid (ECF Doc. 26 at 7, 10); (2) he was found disabled by the Social Security Administration prior to his incarceration (*id.* at 10-11); (3) he used a cane before his incarceration and FDOC medical providers issued him a cane pass (*id.* at 6, 10-11); (4) FDOC medical providers, including the Medical Defendants, treated him with medication and therapy (*id.* at 7, 10-11). Additionally, Plaintiff attached documents to his complaint from the Social Security Administration which indicate he "has clinical diagnoses of Status Post Fracture of the Left Lower Extremity, Limb Pain, Lumbar Intervertebral Disc Displacement and Lumbosacral Radiculitis." *Id.* at 36. The undersigned finds Plaintiff's complaint and the exhibits attached thereto establish a serious medical need. *See Farrow*, 320 F.3d at 1243 ("[A] serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'") (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)); *Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900-01 (4th Cir. 2013) (finding serious medical need when "the medical records submitted by [the plaintiff] with his

complaint show that he suffered from arthritis and degenerative disc disease and that he had chronic pain in his back, leg, pelvis and hip").

The Medical Defendants also argue Plaintiff's allegations do not demonstrate the subjective component of a deliberate indifference claim. Nurse Chandler asserts she cannot be liable for an Eighth Amendment violation because she was following Dr. Asencio's orders when took Plaintiff's cane upon his August 15, 2016 return to Walton CI from the RMC, and "[n]one of the allegations directed at [her] show that she subjective knowledge of a substantial risk of serious harm and disregarded that risk by conduct that is more than mere negligence." ECF Doc. 45 at 14.

Assuming Plaintiff's allegations are true, the undersigned cannot conclude at this stage in the proceedings that Chandler's decision to follow Dr. Asencio's order was reasonable. Plaintiff alleges Chandler knew he had a cane pass issued by a physician at the RMC and knew he had not been evaluated by Dr. Asencio since his return to Walton CI. *Cf. Bauer v. Kramer*, 424 F. App'x 917, 919 (11th Cir. 2011) ("A nurse is not deliberately indifferent when she *reasonably* follows a doctor's orders by administering prescribed medication to an inmate.") (emphasis added). Furthermore, although Plaintiff's claim against Chandler ultimately may not survive a motion for summary judgment, the allegations at least suggest Chandler disregarded a known risk of serious harm by conduct more culpable than negligence when she took Plaintiff's cane. Chandler knew Plaintiff had a pass for the cane and

Plaintiff alleges he "persistently" told the Medical Defendants about his chronic back, knee and femur pain. ECF Doc. 26 at 7, 11, 21. Additionally, Chandler placed him in the infirmary to be evaluated and provided no reason for taking his cane other than the RMC evaluations did not matter. Accordingly, based on Chandler's interference with a prescribed treatment, and the knowledge such interference could cause additional pain, Plaintiff has stated an Eighth Amendment claim against Chandler.

With respect to Nurses Rice and Simmons, Plaintiff alleges he arrived at Walton CI on May 11, 2015, and explained to the nurses that he needed his "cane to ambulate and balance." ECF Doc. 26 at 6. Although Plaintiff had a pass for the cane, Simmons confiscated it and Rice stated, "your being disabled was not the same as in society." *Id.* at 6, 14-15. In subsequent visits to the medical department, Rice "made reference to the taking of Plaintiff's cane as if it was a joke." *Id.* at 15.

These allegations, and the reasonable inferences drawn therefrom, are sufficient to state a deliberate indifference claim against Rice and Simmons. The allegations indicate the nurses knew Plaintiff was found disabled before his incarceration, knew he had a pass for a cane and knew depriving him of the cane could make it difficult for him to walk and balance, leading to pain and a risk of falling. Nevertheless, the nurses took Plaintiff's cane from him. *See Walker v. Cty. of Nassau*, 15-CV-4794 (JFB)(SIL), 2016 WL 11481725, at *13 (E.D.N.Y. Aug. 8,

2016) ("With respect to the subjective prong of the deliberate indifference standard, a willful deprivation of a cane or other medical equipment, resulting in pain, will ordinarily support an inference of deliberate indifference.") (citations omitted).

With regard to Dr. Asencio, Plaintiff alleges he consistently told Asencio he suffered from chronic back and leg pain (ECF Doc. 26 at 7) and repeatedly requested a cane or walker (*id.* at 7, 10). Dr. Asencio signed a response to a formal grievance in which Plaintiff complained about the loss of his cane, a change in his medication to ibuprofen, the ineffectiveness of the ibuprofen and ongoing pain. *Id.* at 40-41. Plaintiff tried to show Asencio the medical records detailing his condition but Asencio refused to view them. *Id.* at 10. When Plaintiff returned to Walton CI with a pass for a cane in August 2016, Dr. Asencio ordered Nurse Chandler to confiscate it without examining Plaintiff. *Id.* at 11. These allegations state a deliberate indifference claim against Dr. Asencio.

Additionally, the Medical Defendants argue that Plaintiff received treatment, and his disagreement with the treatment he received is not sufficient to establish an Eighth Amendment violation. It is true that Plaintiff was not entirely denied treatment for his back and left leg impairment. He admits he received ibuprofen and naproxen and was offered tramadol. ECF Doc. 26 at 7, 10. His allegations and grievances, however, suggest medication alone was not effective in treating his pain, and the provision of walking aid greatly reduced his pain. *Id.* 7, 10; *see Brown v.*

*DeFrank*, No. 06 Civ. 2235(AJP), 2006 WL 3313821, at *23 (S.D.N.Y. Nov. 15, 2006) (denying motion to dismiss where "knowing of [inmate's] painful hip condition, [defendants] did not allow [inmate] to have a cane, which would have greatly reduced [inmate's] hip pain when walking, for approximately one week"); *see also Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) ("Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all.") (citation omitted).

The Medical Defendants also note Plaintiff was provided with a walker and referred to consultations with outside specialists. Plaintiff, however, did not receive the walker until February 15, 2017. ECF Doc. 26 at 11. Thus, between May 11, 2015, and February 15, 2017, he did not have any walking aid while he was confined at Walton CI. Furthermore, the specialists at the RMC issued Plaintiff a cane and gave him a pass for the cane; when Plaintiff returned to Walton CI, the Medical Defendants discontinued the treatment provided by the specialists. *Id.* at 10-12; *Bingham*, 654 F.3d at 1176 ("An Eighth Amendment violation may also occur when state officials knowingly interfere with a physician's prescribed course of treatment.") (citation omitted).

Lastly, the Medical Defendants assert "Plaintiff fails to make any allegations that he suffered a physical injury and/or any detrimental effects as a result of the

claimed denial or delay of medical treatment." ECF Doc. 45 at 14. The Medical

Defendants, however, either ignore or minimize the import of Plaintiff's

allegations—that their refusal to provide him with a cane caused debilitating pain

for over a year. A prisoner who suffers severe pain for a prolonged period of time

due to a prison official's inaction satisfies the injury requirement of an Eighth

Amendment claim, even if the delay in receiving treatment does not cause an

irreversible deterioration of the inmate's condition.[6] *See Melton v. Abston*, 841 F.3d

1207, 1227 (11th Cir. 2016) ("[O]fficials violate an inmate's Eighth Amendment

rights by failing to provide, unreasonably delaying or providing grossly inadequate

medical care that causes an inmate to 'needlessly suffer' severe pain.") (citations

omitted).[7]

---

[6] For the same reason, the undersigned finds Plaintiff has alleged a physical injury allowing him to recover compensatory and punitive damages under 42 U.S.C. § 1997e(e). Furthermore, § 1997e(e) does not prohibit Plaintiff from seeking nominal damages for an Eighth Amendment violation, *see Brooks v. Warden*, 800 F.3d 1295, 1307-08 (11th Cir. 2015) (holding "that nothing in § 1997e(e) prevents a prisoner from recovering *nominal* damages for a constitutional violation without a showing of physical injury") (emphasis in original), and Plaintiff's complaint included a request for "such other relief as justice may require." ECF Doc. 26 at 22. The Eleventh Circuit has interpreted similar language as a request for nominal damages. *See Boxer X v. Donald*, 169 F. App'x 555, 559 (11th Cir. 2006) (concluding prisoner "did seek nominal damages when his complaint requested compensatory damages and 'any other relief the court deem[s] appropriate'"). Thus, the Medical Defendants' motion to dismiss this case pursuant to § 1997e(e) should be denied. *See* ECF Doc. 45 at 15-16; ECF Doc. 60 at 13.

[7] Plaintiff has not stated an Eighth Amendment individual capacity claim against Defendant Inch because he does not allege Inch personally participated in his treatment and Inch cannot be held liable under § 1983 based solely on the acts of his subordinates. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.") (citations omitted); *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) ("[L]iability under § 1983 may not be based on the doctrine of respondeat superior."); *Braddy v.*

(b)  Official Capacity

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)); *see also Christman v. Saint Lucie Cty., Fla.*, 509 F. App'x 878, 879 (11th Cir. 2013) ("For purposes of a suit under 42 U.S.C. § 1983, a claim against a defendant in his official capacity is the same as a claim against his employer.") (citations omitted).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Graham*, 473 U.S. at 166 (citation omitted).  "[I]n an official-capacity action . . . [an] entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation [of a federal right] . . . ; thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."  *Id.* (citations omitted).  "[T]o impose § 1983 liability on a [entity], a plaintiff must show: (1) that his constitutional rights were violated; (2) that the [entity] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy

---

*Fla. Dep't of Labor & Emp't Sec.*, 133 F.3d 797, 802 (11th Cir. 1998) ("The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous.").

or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citation omitted).

Here, Plaintiff's Eighth Amendment official capacity claims against Defendants Asencio, Chandler, Inch, Rice and Simmons are in effect claims against the FDOC, Corizon Health, Inc., or Centurion of Florida, LLC. Plaintiff, however, does not allege any of these entities had a custom or policy that caused a violation of his constitutional rights. Indeed, the complaint suggests no such custom or policy existed as Plaintiff alleges "all other inmates housed at [Walton CI] was [sic] receiving adequate treatment." ECF Doc. 26 at 12; *see McDowell*, 392 F.3d at 1290 ("In order for a plaintiff to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice.") (citation and quotation omitted). Because Plaintiff fails to identify any custom or policy that led to a violation of his constitutional rights, his Eighth Amendment official capacity claims should be dismissed against all of the Defendants.[8]

IV. Conclusion

_____

[8] The Defendants also assert they are entitled to Eleventh Amendment immunity to the extent they are sued for damages in their official capacities. Because the undersigned finds Plaintiff has failed to state a claim against the Defendants in their official capacities, the Eleventh Amendment argument need not be addressed. Furthermore, it is not apparent the Medical Defendants would be entitled to immunity under the Eleventh Amendment, as they are employees of a private corporation. *See Boatfield v. Parker*, No. 1:19-CV-027-RLJ-CHS, 2019 WL 1332369, at *8 (E.D. Tenn. Mar. 25, 2019) ("Defendant Centurion, part of a corporate joint venture with 50 billion dollars of annual revenue that provides medical care for inmates in TDOC's custody [Doc. 2 at 19-20], does not enjoy Eleventh Amendment immunity.").

Accordingly, it is RECOMMENDED:

1.     That Defendants Chandler, Simmons and Rice's Motion to Dismiss (ECF Doc. 45) be GRANTED IN PART and DENIED IN PART.

2.     That Defendant Inch's Motion to Dismiss (ECF Doc. 47) be GRANTED.

3.     That Defendant Asencio's Motion to Dismiss (ECF Doc. 60) be GRANTED IN PART and DENIED IN PART.

4.     That Plaintiff's ADA and Rehabilitation Act claims be DISMISSED WITH PREJUDICE against all Defendants.

5.     That Plaintiff's Eighth Amendment official capacity claims be DISMISSED WITH PREJUDICE against all Defendants.

6.     That Plaintiff's Eighth Amendment individual capacity claim against Defendant Inch be DISMISSED WITH PREJUDICE.

7.     That this case be referred to the undersigned for further proceedings on Plaintiff's Eighth Amendment individual capacity claims against Defendants Asencio, Chandler, Rice and Simmons.

At Pensacola, Florida, this 29th day of July, 2019.


*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.