UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOSE M. RODRIGUEZ,

      Plaintiff,

v.                                    Case No. 3:17cv155-RV-HTC

DOCTOR BRENDALIZ ASENCIO,
NURSE CHANDLER,
NURSE RICE, and
NURSE SIMMONS,

      Defendants.

_____/

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff Jose M. Rodriguez, a prisoner proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983, alleging the defendant doctor and nurses violated his Eighth Amendment rights by depriving him of the use of a walking cane, not prescribing him certain narcotic pain medications, and not prescribing him a rolling walker until almost two (2) years after his arrival at Walton Correctional Institution ("Walton CI"). ECF Doc 26. This matter is before the Court on Defendants' motions for summary judgments, with supporting documents. ECF

Docs. 99, 104, 106, 107.[1]  Upon consideration, the undersigned recommends that
the motions be GRANTED.

## I.    BACKGROUND

Plaintiff is an inmate of the Florida Department of Corrections ("FDOC")
currently confined at Mayo Correctional Institution Annex.  The allegations in
Plaintiff's third amended complaint arise from events that occurred when Plaintiff
was confined at Walton CI.  The complaint names four (4) defendants, Dr. Brendaliz
Asencio[2] and Nurses Chandler, Simmons, and Rice.  The crux of the complaint is
that Defendants failed to adequately treat Plaintiff's chronic back and leg pain.
Plaintiff alleges Defendants were deliberately indifferent to his serious medical need
in violation of the Eighth Amendment.[3]  As relief, Plaintiff seeks an injunction and
$850,000.00 in damages.

As an initial matter, Plaintiff's allegations relate to the years 2015-2017.
Between May 11, 2015, when Plaintiff was first transferred to Walton CI, and May
22, 2016, the defendant medical providers were employees of Corizon Health, Inc.
("Corizon").  Beginning on May 22, 2016, Centurion of Florida, LLC ("Centurion")

---

[1] Plaintiff filed a response to the motions at ECF Docs. 115 and 116, and Defendants filed a reply
at ECF Doc. 120.

[2] Although Plaintiff has identified this Defendant as Dr. Brendaliz Ascencio (*see* ECF Doc. 26),
Defendants indicate that the correct spelling is Brendaliz Asencio.  Thus, the undersigned will
direct the clerk to change the spelling on the docket.

[3] Plaintiff also sought to assert claims under the Americans with Disabilities Act and Rehabilitation
Act.  Those claims, as well as Plaintiff's Eighth Amendment official capacity claims, were
previously dismissed by the Court.  *See* ECF Doc. 68 (adopting the R&R at ECF Doc. 66).

replaced Corizon as the medical provider for the FDOC and, thus, Defendants became employees of Centurion. Because of this change in medical providers, Defendants filed two (2) motions for summary judgment. Defendants' motion docketed as ECF Doc. 99 addresses the time period when Centurion was the medical provider, and the motion docketed as ECF Doc. 107 addresses the time period when Corizon was the medical provider. Because the undersigned finds that Plaintiff has failed to present evidence sufficient to show that Defendants were deliberately indifferent to a serious medical need at any time between May 11, 2015 to February 2017, the motions are addressed together herein.

## II.    MEDICAL TREATMENTS[4]

In February 2015, Plaintiff entered FDOC custody with a cane for walking. ECF Doc. 26 at 6. Documents attached to Plaintiff's complaint from the Social Security Administration ("SSA") indicate he "has clinical diagnoses of Status Post Fracture of the Left Lower Extremity, Limb Pain, Lumbar Intervertebral Disc Displacement and Lumbosacral Radiculitis." *Id.* at 36. On February 17, 2015, while Plaintiff was confined at the South Florida Reception Center ("SFRC"), he was issued a "low bunk pass," a pass for "more time for eating," and a "cane pass." ECF Doc. 116 at 28. Those passes were scheduled to expire on May 17, 2015. *Id.*

---

[4] The following facts are derived from the third amended complaint (ECF Doc. 26), the motions for summary judgment with attached exhibits, and Plaintiff's responses and are undisputed by the parties except where noted.

On or around May 11, 2015, Plaintiff was transferred from SFRC to Walton CI. ECF Doc. 106-1 at 26. Upon arrival, Plaintiff was told a cane was not allowed at Walton CI. ECF Doc. 26 at 6. When Plaintiff advised Defendant Nurse Simmons he needed his cane to "ambulate and balance," she took it from him and gave it to an officer. *Id.* Subsequently, Defendant Nurse Rice told Plaintiff that "your being disabled was not the same as in society." *Id.* Nurse Simmons, thus, refused to give Plaintiff a replacement cane. *Id.*

On May 13, 2015, Defendant Nurse Chandler completed and signed a "Health Information Transfer/Arrival Summary" form for Plaintiff. *Id.* at 25-26. The form includes a question regarding whether Plaintiff "require[s] any Passes?" and indicates that Plaintiff requires a cane pass. *Id.* at 25. Defendant Dr. Asencio also signed the form. *Id.* That same day, Dr. Asencio issued Plaintiff a "low/bottom bunk" pass through November 2015. ECF Doc. 116 at 41. Dr. Asencio did not write Plaintiff a pass for a cane or other walking device.

On May 20, 2015, Plaintiff filled out an Inmate Sick-Call Request, indicating that he "[has] pane (sic) back and left femer (sic) intermediat[e] rod." ECF Doc. 106-1 at 23. That same day, Dr. Asencio examined Plaintiff and filled out a "CHRONIC ILLNESS CLINIC" form for Plaintiff. *Id.* at 32. The form indicates that Plaintiff complained of "lots of pain in the knees and back" and that he could not do much exercise. *Id.* Dr. Asencio's treatment plan for Plaintiff included

continuing close observation; various medications and lab work; a low-fat, low-salt diet; and regular exercise, as tolerated, 3-5 days per week. *Id.* Plaintiff alleges that Dr. Asencio told him he needed to lose weight and he agreed with that assessment but told the doctor that he could not exercise without a walking aid. EC Doc. 26 at 10. Dr. Asencio did not prescribe him a walking aid.

On June 12, 2015, Plaintiff filled out a second Inmate Sick-Call Request, indicating that he had run out of aspirin/ibuprofen and would like a renewal. *Id.* at 19. On June 15, 2015, Nurse McDonnell examined Plaintiff at sick call and filled out a "Back Pain Protocol" form for Plaintiff. *Id.* at 17. The nurse indicated that Plaintiff had a history of back pain and back problems, for which he received pain medication. *Id.* The nurse noted that the pain was chronic and that it worsened when Plaintiff was standing. *Id.* The nurse noted that "ibuprofen" decreased or relieved the pain. *Id.* Finally, the nurse noted that Plaintiff's gait was normal and that there were no signs of swelling, bruising, or discoloration of Plaintiff's back. *Id.* Nurse McDonnel gave Plaintiff ibuprofen and referred Plaintiff's chart to Dr. Asencio for "possible" prescription pain medications. *Id.* at 20. On August 2, 2015, Dr. Asencio referred Plaintiff's chart to the clinician for renewal of Plaintiff's routine pain medications. *Id.* at 18.

On November 19, 2015, Plaintiff filled out a third Inmate Sick-Call Request, indicating that he was disabled; that he had an "ongoing" leg, knee, and back

problem; that he was currently taking ibuprofen for his pain, but the ibuprofen was not working; that he needed treatment for his back; and that he wished for the medical staff to review his disability records. *Id.* at 13. Dr. Asencio examined Plaintiff and filled out a "CHRONIC ILLNESS CLINIC" form for Plaintiff. *Id.* at 31. The form indicates that Plaintiff complained about his pain and was "visibly upset." *Id.* Dr. Asencio's treatment plan for Plaintiff included continued observation; at least four (4) medications; lab work; a low-fat, low-salt diet; and regular exercise, as tolerated, 3-5 days per week. *Id.*

On November 20, 2015, Plaintiff was examined during sick call, where he reported suffering from "chronic back pain" and numbness or tingling in both legs. *Id.* at 11. Nurse J. Carter, the nurse who examined Plaintiff, noted that Plaintiff's gait was normal and that there were no signs of swelling, bruising, or discoloration of Plaintiff's back. *Id.* Nurse Carter gave Plaintiff an OTC topical analgesic and noted the following:

> Requesting stronger Rx. Demanding x-rays … injections, belligerent when asked to explain … Could not comply [with] some requests and records [requests] but not received – will talk [with] medical records – Refer chart to MD to eval requests.

*Id.* at 14.

On December 4, 2015, Plaintiff received an x-ray of his knee and spine. *Id.* at 12. On February 21, 2016, Plaintiff filed a fourth Inmate Sick-Call Request, indicating that his cane had been taken from him "without a medical assessment";

that there had been no follow-up treatment following Plaintiff's x-rays; and that his prescribed medication was "not having results." *Id.* at 9.

On May 9, 2016, Dr. Asencio examined Plaintiff and filled out a "CHRONIC ILLNESS CLINIC" form for Plaintiff. *Id.* at 30. The form indicates that Plaintiff complained about his back pain; that he couldn't exercise; and that "Naproxen doesn't work." *Id.* Dr. Asencio's treatment plan for Plaintiff included continued observation; five (5) pain medications, including Tramadol and Naproxen; lab work; and an MRI on Plaintiff's lower back. *Id.* That same day, Dr. Asencio filled out a "Drug Exception Request" form for Plaintiff, requesting that Plaintiff be permitted to take Tramadol, a narcotic. *Id.* at 33. However, Dr. Asencio's request was not approved by the Regional Medical Director. *Id.* at 36.

On May 11, 2016, Dr. Asencio referred Plaintiff for physical therapy. ECF Doc. 104-1 at 1. Plaintiff was subsequently transferred to Reception and Medical Center ("RMC") for such therapy, which he attended throughout June and July 2016. *Id.* at 4-7. The physical therapist noted "some improvement" in Plaintiff's condition. *Id.* at 7. On June 22, 2016, while at RMC, Plaintiff was issued another cane pass, a pass for no prolonged standing, and a prescription for Tramadol. *Id.* at 3. On July 12, 2016, Plaintiff's cane pass and pass for no prolonged standing were renewed. *Id.* at 8.

On August 15, 2016, Plaintiff was transferred from RMC back to Walton CI.

*Id.* at 10.  On that same day, Nurse Chandler examined Plaintiff and noted:

> Inmate arrived [with] cane and passes for low bunk and no prolonged
> standing > 15 min/hr.  Inmate was informed that he would not be
> allowed to keep the cane on the compound.  Inmate stated "I have to
> have the cane, I can't walk without it.  Why can't I have it, I had one
> here before?"  Inmate instructed by nurse to report to medical when
> released from security in VP to exchange cane for walker.  Explained
> to inmate the cane was considered a weapon and it would not be taken
> to the compound.  Inmate continued to argue [with] nurse about cane.
> Inmate finally says "ok, ok."  When inmate was released from VP, he
> went to G dorm, was called back to medical.  Upon arriving in medical,
> inmate ambulating [with] minimal use of cane.  Gait steady, no limping
> noted, back is straight.  Inmate not walking bent forward.  Appears to
> be in no acute distress.  Inmate placed in infirmary until evaluation by
> physician.

*Id.*

Approximately two (2) hours later, Dr. Asencio reviewed Plaintiff's chart and
noted that Plaintiff suffered from chronic back pain and was evaluated by a physical
therapist who recommended physical exercises and who noted improvement in
Plaintiff's condition.  Dr. Asencio ordered continued physical therapy exercises as
recommended by the physical therapist; continued passes for a low-tier bunk, no
prolonged standing, and no pushing or lifting; discontinuing the cane; an abdomen
support binder; and pain medication in the form of Tramadol and Motrin.

One (1) hour later, Nurse Chandler noted the following:

> Inmate instructed to continue exercises as recommended by physical
> therapy.  Low bunk, low tier, no lift, push or pull > than 15 lbs and
> binder given for back support; passes given.  Inmate informed of no

cane or walker.  Inmate became angry, states "I have to have a cane or a walker.  I am disabled on the street.  I'll just have to write her up again.  This is ridiculous."  Inmate also states, "I have all of my disability paperwork, I don't know why they don't recognize it here."  Binder given to inmate with instructions.  Inmate stands up from sitting on bed and begins packing his books in his bag bending at waist multiple times with no distress noted.[5]  Pass given to return [three (3) times per day] for single issue medication.

*Id.* at 11.  Nurse Chandler later noted:

Inmate released to security, condition is stable.  Ambulates without difficulty, carries large of property with no distress seen.  Inmate instructed to follow up through sick call with any change or worsening of condition.

*Id.*

On August 19, 2016, Dr. Asencio noted that Plaintiff suffered from Degenerative Disc Disease and was recently sent to physical therapy.  *Id.*  Dr. Asencio further noted that the physical therapist had documented improvements upon examination.  *Id.*  Dr. Asencio went on to note that Plaintiff was requesting a cane but had been observed by nursing and security personnel as able to perform sudden movements while lifting objects without limitations.  *Id.*  Dr. Asencio ordered that Plaintiff be scheduled to undergo x-rays of the femur, pelvis, and lumbar

---

[5] Although Plaintiff does not dispute that is what is written in the medical records, Plaintiff alleges he "never bent or packed any belongings" and that the medical orderly packed and carried his belongings for him.  ECF Doc. 115 at 15, 16.

spine. *Id.* Finally, Dr. Asencio ordered continuation of two (2) pain medications, NSAIDs and Tramadol, and noted that Plaintiff's passes were given to security.[6] *Id.*

That same day, Dr. Asencio noted that the Drug Exception Request for the pain narcotic Tramadol had not been approved by the Regional Medical Director. *Id.* at 12. However, an Alternative Treatment Plan was issued for alternative pain medication in the form of Effexor or Elavil. *Id.* Thus, Plaintiff was prescribed Elavil twice per day and Motrin was continued. *Id.*

On August 26, 2016, Plaintiff underwent x-rays of his femur, spine and pelvis. *Id.* at 14. The x-rays revealed mild degenerative changes at L3-4 and L4-5 and no acute fracture at the lumbar spine, as well as a normal exam of the pelvis and no acute pathology of the femur. *Id.* Dr. Asencio later reviewed the x-ray results and noted that Plaintiff suffered from chronic back pain, mild disc space narrowing at L3-4 and L4-5, and small osteophytes. *Id.* at 13. Dr. Asencio also noted a normal alignment of the pelvis and femur and no evidence of avascular necrosis. *Id.*

On October 20, 2016, Dr. Asencio requested radiology services in the form of an MRI for Plaintiff. *Id.* at 15. Dr. Asencio's request was approved, and Plaintiff was transferred to RMC for the MRI. *Id.* at 15, 16. On December 21, 2016, Plaintiff underwent a Lumbar Spine MRI at RMC, which revealed "[m]ultilevel disc bulges, L4-5 and L5-S1 levels affecting both the L5 and S1 nerve roots." *Id.* at 16.

_____

[6] Plaintiff disputes that his passes were ever actually given to security. ECF Doc. 115 at 16.

On January 23, 2017, the RMC provider reviewed the result of the MRI and examined Plaintiff. *Id.* at 17. The RMC physician noted that the MRI revealed multilevel disc bulges at L4-5 and L5-S1. *Id.* It was also noted that Plaintiff had undergone physical therapy and that Plaintiff was requesting pain medication. *Id.* New pain medications (Keppra, Flexil and Motrin) were recommended to Plaintiff as a trial. *Id.*

Plaintiff returned to Walton CI from RMC on or around February 13, 2017. *Id.* at 18. Upon his return, Plaintiff was provided a walker, which Plaintiff claims was "non-operable" because it did not have wheels or a seat for resting. ECF Doc. 26 at 11. Plaintiff further alleges that walkers with wheels and seats were prescribed for other inmates at Walton CI. *Id.* On February 23, 2017, Plaintiff complained to Nurse Abbott that his walker only had two (2) wheels on it, which was impeding Plaintiff from ambulating, using the recreation yard, and showering. *Id.* at 19. Plaintiff instead requested a "rollator" walker. *Id.*

Nurse Abbott (who is not a defendant in this action) noted in the medical records, however, that Plaintiff was picking up the walker and walking without any visual distress. *Id.* Nurse Abbott also noted that Plaintiff suffered from mild Degenerative Disc Disease at L3-4 and L4-5. *Id.* Nurse Abbott replaced Plaintiff's walker with one that had a seat so that Plaintiff could take rests in the recreation yard and sit down when showering. *Id.* Nurse Abbott instructed Plaintiff on the use of

the seat on his new walker, but Plaintiff became angry and wanted a "rollator." *Id.*

Nurse Abbott explained to Plaintiff that a rollator was not available but that a walker with a seat would serve his needs; however, Plaintiff nonetheless become angry and verbalized that he would grieve the issue. *Id.*

On March 31, 2017, Dr. Asencio evaluated Plaintiff regarding his back pain. *Id.* at 20. Plaintiff complained that his medications were making him dizzy and requested a different pain medication. *Id.* Dr. Asencio examined Plaintiff and noted that Plaintiff suffered from Degenerative Disc Disease and radiculopathy. *Id.* Dr. Asencio also noted that Plaintiff had a "demanding attitude." *Id.* Dr. Asencio completed a request for a neurosurgeon specialist consultation for Plaintiff. *Id.* Dr. Asencio also referred Plaintiff for an inspection of his walker and noted that she requested from the Regional Medical Director narcotic pain medication in the form of Tramadol for Plaintiff. *Id.* Finally, Dr. Asencio discontinued the medication Keppra based on Plaintiff's complaints of dizziness. *Id.*

Dr. Asencio's neurosurgery evaluation request for Plaintiff was approved and, in May of 2017, Plaintiff was transferred to RMC. *Id.* at 21. On May 12, 2017, the CT scan of Plaintiff's lumbar spine was referred to Neurosurgery. *Id.* at 24. On May 13, 2017, Plaintiff's prescription for Tramadol was renewed. *Id.*

On May 26, 2017, Nurse Patrick (who is also not a defendant in this action) noted in the medical records that Plaintiff was requesting prescription renewals, pain

medications, and passes and wanted to discuss his MRI results. *Id.* at 26. A referral was made to the primary care physician on May 31, 2017. *Id.* Nurse Patrick also noted that, at some point prior to her examination, Plaintiff had received a new rolling walker because he claimed the first one he was provided had a broken wheel. *Id.*

On June 9, 2017, Plaintiff underwent lumbar spine x-rays, which revealed no acute fracture. *Id.* at 27. On that same date, Plaintiff underwent a CT Scan of his lumbar spine, which revealed mild degenerative changes with no acute pathology. *Id.* at 28. On July 25, 2017, Plaintiff was sent to Jacksonville Memorial Hospital Urgent Care, where another CT Scan of his lumbar spine was completed. *Id.* at 29. Plaintiff was then transferred back to RMC and was noted to be in no pain and no distress. *Id.* at 30. The examining doctor at RMC did not prescribe Plaintiff medication. *Id.*

Three (3) days later, on July 28, 2017, Dr. Haddad noted that Plaintiff suffered from lower back pain with radiation to the leg and had completed a CT Scan and MRI of his spine, which revealed bulging discs. *Id.* at 31. Dr. Haddad noted that after imaging with neurosurgeon[7], there was no indication of surgical treatment. *Id.* Dr. Haddad ordered that Plaintiff follow up with the primary care physician within

---

[7] Plaintiff states that, to the best of his knowledge and belief, he was never "advised" of any imaging with neurosurgeon. ECF Doc. 115 at 20.

sixty (60) days for re-evaluation and possible non-surgical treatment options. *Id.* Dr. Haddad also ordered another consultation if Plaintiff's condition changed. *Id.*

On August 8, 2017, Plaintiff consulted with Nurse Simandl regarding his back pain, pain medications, back brace, and passes. *Id.* at 32. Plaintiff requested to be transferred to the main unit at RMC because he claimed he was not getting proper medication at the west unit. *Id.* Plaintiff complained regarding his current pain medications and requested renewal of passes. *Id.* Plaintiff's medications and passes were renewed, and a plan of treatment was discussed with Plaintiff, who verbalized understanding. *Id.*

On or around September 1, 2017, Plaintiff was transferred back to Walton CI, at which time he again consulted with Dr. Asencio. *Id.* at 33. Dr. Asencio noted that Plaintiff had a history of radiculopathy and obesity. *Id.* Dr. Asencio reviewed the plan of treatment from RMC and requested prescriptions for Plaintiff. *Id.* That same day, multiple Drug Exception Requests were completed for the prescriptions requested by Dr. Asencio, including for Gabapentin. *Id.* Gabapentin, however, was not approved by the Regional Medical Director, Dr. Lay. *Id.*

On September 3, 2017, Plaintiff requested Tramadol for his lower back pain. *Id.* On September 5, 2017, Nurse K. Simmons noted that Tramadol was requested for Plaintiff by a Drug Exception Request. *Id.* On September 7, 2017, Dr. Asencio noted that Plaintiff's case was discussed in detail with Dr. Lay. *Id.* at 34. Dr.

Asencio noted that after careful evaluation and consideration, Dr. Lay did not approve narcotic pain medication Tramadol for Plaintiff. *Id.* However, Dr. Asencio noted there are other types of pain medication available for Plaintiff. *Id.* Dr. Asencio noted the medical reasons for Plaintiff's current plan of treatment and ordered that Plaintiff continue physical therapy and continue to take other pain medications. *Id.*

## III.    SUMMARY JUDGMENT STANDARD

To prevail on their motion for summary judgment, Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If Defendants successfully negate an essential element of Plaintiff's case, the burden then shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). An issue of fact is material only if it is a legal element of the claim, under the applicable substantive law, which might affect the outcome of the case. *See id.*; *accord Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).

The Court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust Co. v. Fidelity and Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). The Court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249–50 (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting *Anderson*, 477 U.S. at 242). Additionally, "conclusory allegations without specific supporting facts have no probative value" and are legally insufficient to defeat summary judgment. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (citations omitted).

## IV. DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED

A § 1983 claim may arise when prison officials act with deliberate indifference to an inmate's serious medical needs in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). However, the

Supreme Court has emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105; *Mandel,* 888 F.2d at 787. Rather, medical treatment violates the Eighth Amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir. 1986) (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106 ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Mandel,* 888 F.2d at 787–88 (mere negligence or medical malpractice is "not sufficient" to constitute deliberate indifference); *Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989) (mere medical malpractice does not constitute deliberate indifference).

To prevail on a claim of deliberate indifference to a serious medical need, Plaintiff must present evidence to establish the following: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc*., 588 F.3d at 1291, 1306-07 (11th Cir. 2009) (citing *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007)). As set forth below, while the undersigned finds that Plaintiff

has established a serious medical need, he has failed to present sufficient evidence to establish deliberate indifference.[8]

### A.    Serious Medical Need

To establish the first element of his claim, Plaintiff must present evidence sufficient to demonstrate that he suffered a serious medical need. "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann,* 588 F.3d at 1307. In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition. *Id.* In either case, "the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Id.* (citing *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003)).

As set forth above, it is undisputed that Plaintiff suffered from pain in his back and knee and received treatment for those issues. Plaintiff has submitted records from the SSA indicating that he had "clinical diagnoses of Status Post Fracture of the Left Lower Extremity, Limb Pain, Lumbar Intervertebral Disc Displacement and

---

[8] Because the Court finds no deliberate indifference by Defendants, it need not address whether Plaintiff has established causation. However, the Court notes that Plaintiff has not provided any medical records indicating that his condition worsened due to the acts or omissions of Defendants or that Plaintiff's pain was *caused* by Defendants rather than by his prior degenerative conditions or obesity. *See LaMarca v. Turner,* 995 F.2d 1526, 1538 (11th Cir. 1993) (finding that, to establish causation, a plaintiff must prove that defendants' acts or omissions "were the cause – not merely a contributing factor – of the constitutionally infirm condition").

Lumbosacral Radiculitis" when he was placed in FDOC custody. ECF Doc. 26 at 36. Additionally, Plaintiff's medical records while in custody show that he suffers from Degenerative Disc Disease, radiculopathy, and chronic back pain. Thus, as an initial matter, the undersigned finds that Plaintiff has sufficiently demonstrated that he suffers from a serious medical need. *See Monteleone v. Corizon*, 686 F. App'x 655, 658-659 (11th Cir. 2017) ("we, like the district court, accept that [the plaintiff's] degenerative disk disease, spinal stenosis, and compressed disks with sciatica nerve pain, constitute a serious medical need"); *see also Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900-01 (4th Cir. 2013) (finding serious medical need where "the medical records submitted by [the plaintiff] with his complaint show that he suffered from arthritis and degenerative disc disease and that he had chronic pain in his back, leg, pelvis and hip").

### B.    Deliberate Indifference

To establish the second element of his claim, Plaintiff must show that Defendants both knew of *and* disregarded an excessive risk to his health or safety. "[T]he official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], *and* he must also [have] draw[n] the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). Plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence."

*Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (citing *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)). "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Id.*

Establishing deliberate indifference also requires Plaintiff to show "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). Thus, Defendants' response to Plaintiff's serious medical need must be "poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligen[ce] in diagnosi[s] or treat[ment], or even [m]edical malpractice." *Id.* at 1258 (citing *Estelle,* 429 U.S. at 105–06).

Defendants argue that Plaintiff cannot establish the deliberate indifference element of his Eighth Amendment claims because Plaintiff's claims amount to nothing more than a disagreement over treatment. ECF Docs. 99 at 20, 21; 107 at 9. Based on a review of the medical records (which are not disputed), the undersigned agrees. This is not a case in which Defendants ignored Plaintiff's serious medical need, but it is simply one in which Plaintiff believes he should have received *different* treatment – namely, that he should have been allowed to keep his cane and prescribed narcotic medications. A mere difference in medical opinion between the

prison's medical staff and the inmate as to the latter's diagnosis or course of treatment, however, does not support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977) ("[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment.")).

As shown above, Plaintiff received a host of medical treatment from the Defendants, including: (1) being prescribed numerous pain medications, topical analgesics, steroid injections, and an abdomen support binder; (2) being referred to consultations with various specialists, to physical therapy, and for multiple x-rays, MRIs, and other diagnostic tests; and (3) being given various passes. Additionally, when warranted, Plaintiff was also prescribed a walker. Plaintiff does not dispute that he received these treatments. He further agrees that the physical therapy sessions were helpful. *See* ECF Doc. 26 at 10.

Specifically, with regard to Plaintiff's claim that Defendants were deliberately indifferent to his medical needs by failing to prescribe him with narcotic medications, the medical records show that Dr. Asencio prescribed Plaintiff (or, at the very least, sought on Plaintiff's behalf from the Regional Medical Director) numerous medications throughout his time at Walton CI, including Motrin, Naproxen, Tramadol, Elavil, Keppra, and Flexil. The record further demonstrates

that Dr. Asencio altered Plaintiff's medications when Plaintiff complained that they were ineffective or that they made him dizzy.

To the extent Plaintiff takes issue with the fact that his Tramadol and Gabapentin prescriptions were not continued in lieu of other medications, failure to provide an inmate with a medication of his choice does *not* constitute deliberate indifference. *See Mobley v. Lipson*, 2011 WL 7416512, at *2 (N.D. Fla. Dec. 28, 2011) (finding that Plaintiff, who alleged he was prescribed Prilosec prior to his incarceration but that the prison doctor changed his medication to Zantac, which was not as effective as Prilosec, failed to state an Eighth Amendment claim because "[a]t most, Plaintiff's claims reflect a disagreement with [the doctor's] medical judgment regarding which medications to prescribe Plaintiff" and "[g]enerally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference").    Thus, the undersigned finds that no reasonable juror could conclude based on the medical records that Defendants were deliberately indifferent.

Similarly, Plaintiff has failed to present evidence to show that Defendants were deliberately indifferent to his medical needs by taking his cane away or failing to prescribe him with a rolling walker with a seat until 2017.  First, Plaintiff does not dispute that his cane was taken away from him when he arrived at Walton CI for

security reasons. He admits that the defendant nurses told him his cane was being taken away for security concerns.

Second, while there is no dispute that Plaintiff used a cane before entering FDOC custody, that Plaintiff was given a cane pass at RMC on two (2) occasions, and that in each instance, Dr. Asencio had the cane taken away from Plaintiff when he arrived at Walton CI, those facts alone are insufficient to show that Dr. Asencio or the defendant nurses were deliberately indifferent to a medical need. This is so because Defendants did not believe that Plaintiff needed a cane and Plaintiff has failed to show that his need could be treated with only a cane. Defendants, thus, had a legitimate reason to take the cane away. *See Harry v. Wagner*, 2014 WL 2091202, at *8 (M.D. Fla. May 19, 2014) ("defendants' security concerns are no less valid merely because they may have interfered with Plaintiff's medical treatment as long as his medical needs were not ignored") (citing *Rix v. McClure,* 2012 WL 1183435 (D. Kan. 2012) (holding defendants' concern that Plaintiff could use his cane as a weapon was a legitimate security concern)).

The question then becomes whether Plaintiff has shown that Defendants were deliberately indifferent in not prescribing him with another walking aid until February 2017. Defendants argue that Plaintiff has failed to present evidence to show that a walking aid was the only treatment sufficient to serve Plaintiff's needs

at Walton CI or that the other treatments he received were insufficient. The undersigned agrees.

As stated above, to establish deliberate indifference, Plaintiff must show that Defendants had subjective knowledge that Plaintiff required a cane or other walking aid and deliberately ignored that need. In this case, although Plaintiff may have felt, based on his prior use of a cane, that he needed a cane or other walking aid at Walton CI, the record reflects that Defendants disagreed. The record further reflects that Defendants' assessment that Plaintiff did not need a cane or other walking aid was based on medical judgment.

Specifically, the record reflects that, on multiple occasions, Defendants and other medical and security personnel observed Plaintiff ambulating on his own with no signs of visual distress and that Plaintiff's gait was normal. Indeed, although Plaintiff alleges that walking without a cane put him at "risk" of falling and injuring himself, and although Plaintiff has provided affidavits indicating that other inmates observed Plaintiff fall on one or more occasions, he provides no evidence that any of the Defendants were aware of any instances in which Plaintiff fell or had trouble walking. Moreover, while Plaintiff told Defendants on multiple occasions that he was in pain without a cane, Defendants prescribed pain medication and other treatment to alleviate the pain, such as physical therapy.

As Defendants point out, the crux of Plaintiff's case appears to be based on his belief that he was entitled to a cane at Walton CI merely because he had a cane prior to entering FDOC custody and was issued a cane pass at other institutions. Plaintiff, however, is incorrect. *See Hall v. Moore*, 2015 WL 9946410, at *9 (N.D. Fla. Dec. 29, 2015) ("[a] defendant's knowledge of a medical pass, without more, is insufficient to establish deliberate indifference") (citing *Redding v. Georgia*, 557 F. App'x 840, 844 (11th Cir. 2014) (holding that plaintiff's allegation that prison officials assigned him to a top bunk contrary to his medical profile indicating the need for a bottom bunk failed to state an Eighth Amendment claim because, although "[i]t may have been negligent to assign [plaintiff] a bunk contrary to his profile … an Eighth Amendment claim requires conduct rising to a level above even gross negligence")).[9]   Likewise, Plaintiff's own judgment that he needed a cane is insufficient to establish a claim of deliberate indifference.

---

[9] *See also Bismark v. Fisher*:

> [Plaintiff] would have us conclude that Dr. Fisher was obliged to implement another doctor's treatment plan, even where that plan was in conflict with his own medical judgment. Nothing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that a simple difference in medical opinion does not constitute deliberate indifference…. Far from interfering with treatment once prescribed, Dr. Fisher was a physician who personally prescribed treatment for [Plaintiff], albeit not that requested by [Plaintiff]. The Eighth Amendment did not compel Dr. Fisher to check his own medical training and judgment at the door, simply because he was informed that some other doctor at some other time had prescribed orthopedic shoes for his patient.

213 F. App'x 892, 897 (11th Cir. 2007).

Plaintiff also alleges that Defendants' refusal to provide him with a cane was an act of retaliation or discrimination. Such assertions, however, are merely conclusory; there is nothing in the record indicating that Defendants purposefully mistreated Plaintiff or were in any way retaliatory or discriminatory toward him. To the contrary, there is ample evidence that Defendants frequently altered their treatment plans in an effort to adequately treat – as well as appease – Plaintiff. *See Hall*, 2015 WL 9946410 at *6 (when considering a motion for summary judgment, a court may not "accept any facts that are 'blatantly contradicted by the record, so that no reasonable jury could believe [them]'") (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

This is simply not a case in which Plaintiff was provided with cursory or grossly inadequate care. This is also not a case in which Defendants took an "easier but less efficacious course of treatment"; rather, in prescribing Plaintiff physical therapy treatments, consultations with various specialists, and numerous x-rays, MRIs, and other diagnostic tests as well as regularly altering Plaintiff's combination of medications in an effort to relieve his pain, much greater time and expense was expended on Plaintiff's treatment than if Defendants had just provided Plaintiff with a cane or walker as soon as he arrived at Walton CI in 2015. As such, there is nothing in the record that indicates to the Court that the decision to *not* provide Plaintiff with a cane when he arrived at Walton CI, or that he did not need a walker until February

2017, was based on anything other than "sound professional judgment." *See Bowring,* 551 F.2d at 48.

Thus, based on the evidence presented, no reasonable jury could find that Defendants' actions constitute deliberate indifference. Even assuming, *arguendo,* that Dr. Asencio was incorrect in her determinations regarding Plaintiff's medical treatment – namely, that other forms of treatment were adequate to treat Plaintiff's needs – such error, and the nurses' administration of such error, is not "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness" as necessary to establish a constitutional violation. *See Rogers*, 792 F.2d at 1058.

## V.    PLAINTIFF'S PENDING MOTION

Also pending before the Court is a motion by Plaintiff entitled "Plaintiff's Clarification of Defendants' Motion for Enlargement of Time, Document 117," in which Plaintiff clarifies that he has filed two (2) separate responses in opposition to Defendants' motions for summary judgment and asks the Court to accept and consider both. ECF Doc. 122. Plaintiff's motion is granted to the extent that the Court has accepted and carefully considered both of Plaintiff's responses in opposition (ECF Docs. 115, 116).

## VI.   CONCLUSION

Based on the uncontroverted evidence set forth in the medical records and the declaration of Dr. Lay, the undersigned finds that Plaintiff failed to meet his burden of demonstrating that Defendants violated a constitutional right.   As such, the undersigned finds that Defendants are entitled to summary judgment.

Accordingly, it is ORDERED that:

1.      Plaintiff's motion at ECF Doc. 122 is GRANTED to the extent set forth herein.

2.      The clerk shall update the docket to reflect the correct spelling of Defendant Dr. Brendaliz Asencio's name, as discussed above in Footnote 2.

And, it is respectfully RECOMMENDED that:

1.      Defendants' motions for summary judgment (ECF Docs. 99, 107) be GRANTED and judgment be entered in favor of Defendants.

2.      The clerk be directed to close the file.

Done at Pensacola, Florida this 6th day of August, 2020.

_s/ Hope Thai Cannon_

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.   Any different deadline that

may appear on the electronic docket is for the Court's internal use only and does not control. A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.